TUAN HAI DANG
493 Verano Ct., San Jose, CA 95111
*In Proper Persona*



AUG 27 2010

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

In re: TUAN HAI DANG

Chapter 13
Case No.: 10-57266

ADDENDUM
Opposition to Motion for Relief From Stay

_____Debtor_____/

| HSBC BANK USA as Trustee for SEQMT 2007-3 | Date Sept. 1, 2010 |
| | Rm 3035 |
| v. | Judge Weissbrodt |
| | Time 2:15 PM |
| TUAN HAI DANG | |

## OPPOSITION TO MOTION

This opposition is made on the following grounds: it is not brought by the real party in interest pursuant to Federal Rules of Civil Procedure; the actual "loan" was a MERS loan and MERS *is not allowed to do business* in the STATE OF CALIFORNIA having been forbidden by the California State Secretary of State and California State Attorney General; MERS does not have standing to bring the action on it's own as it deliberately destroyed the note after selling it; the Settlor and Grantor, TUAN HAI DANG, has an automatic stay from any creditor action pursuant to Title 11 Section 301 of the US Bankruptcy Code, until such time as he files his plan or his bankruptcy is discharged, and no action can be taken against his house in the meantime unless it can be shown through proof that he is either

performing illegal activities of drug use in the house, or that he is destroying the property, neither of which is the case (See attached Declaration) <u>according to the NOLO Law Book for Chapter 13 Bankruptcy an owner or former owner of a property may stay in his home for the entire period of his bankruptcy and no relief of stay may be granted unless he is performing illegal activities in the home or is destroying the home. In order for any relief of stay to be granted, proof of either illegal activity or destruction of the home must be provided to the court, not just an allegation that illegal activities or destruction of the property might happen</u>. Petitioner HSBC BANK USA has not met their burden of proof and has never proved either of those two conditions and therefore their adversarial request for relief from stay is barred by Title 11 and Federal Rules requiring that the action be brought by the real party in interest.

 Federal rules of civil procedure require that the real party in interest in any action bring the action. This action is not brought by the real party in interest, nor is it brought by a representative acting on behalf of the real party in interest. This claim is brought on behalf of a shadow un-named party in interest called MERS that is no longer legally allowed to do business in the STATE OF CALIFORNIA, as well as many other states, and therefore has no standing to bring this suit. This adversarial proceeding must be dismissed under the federal rules of civil procedure for the reason that the real party in interest has not brought it, and cannot legally bring it in this state. Further, MERS cannot legally enforce any foreclosure as it has shred all original promissory notes, after sale in bundled schefs of mortgage backed securities, and therefore, for the reasons set forth in several publications of Honorable Samuel Bufford, US Bankruptcy Court Judge, Central District of California, including In Re: Vargas; Where is the Note?; and his local rules of court requiring possession of the original Promissory Note brought into court prior to any filing for relief from stay; and a recent ruling of the US Bankruptcy Court for the Eastern District of California.

 In this adversarial proceeding, the federal bank called HSBC BANK USA is the petitioner. HSBC BANK USA, who is barred legally from making investments of it's own assets as a federal bank pursuant to Title 12 U.S.C. and therefore cannot legally purchase or own the real property whose possession is at issue in this proceeding, is defined as a legal incompetent (corporation) and an enz legis, legal fiction. <u>HSBC BANK USA admits on the face of it's papers for this</u>

adversarial proceeding that it is not bringing the action on behalf of itself, but on behalf of another incompetent and enz legis (legal fiction) called SEQMT 2007-3. Therefore HSBC BANK USA admits that it is not the real party in interest in this action, and therefore the motion must be dismissed pursuant to the Federal Rules of Civil Procedure, due to the admission on the face of the papers, that this action is not brought by the real party in interest.

     SEQMT 2007-3 is believed to be a mutual fund, and on that basis is also not the real party in interest for this action. SEQMT 2007-3 is owned by thousands or tens or hundreds of thousands of stock holders and investors in the mutual fund. Therefore, any action to foreclose on the property must by state law have a declaration filed first with the Santa Clara County Clerk-Recorder, containing the signatures of 51 percent of the collateral of the note. This law was not complied with, because the claimed holder of the note, does not know who the true owners of the note are.

     Further, SEQMT 2007-3, is merely a nominee of MERS, in a shell game to conceal the true owners of the note. Those owners of the note cannot enforce the note because the note was shredded by MERS years ago, making the note now unenforceable. Lack of possession of the note or physical separation of the note from the Deed of Trust makes the Note no longer enforceable.

     Laws for each of these assertions can be provided to the court if required, but federal judges are expected to be noticed of all state laws that their federal judicial district is in, in addition to all federal laws.

     For all these reasons, this adversarial proceeding must be dismissed with prejudice against HSBC BANK USA, as it is NOT the real party in interest and therefore cannot bring this claim into court under the Federal Rules of Civil Procedure.

Dated: August 27, 2010            By: _____.
                                                     TUAN HAI DANG

# DECLARATION

IN OPPOSITION TO RELIEF FROM STAY

I hereby certify, to both this court, under penalty of perjury that the foregoing statements are true, correct, complete, not misleading, made without reservation of mind, that I am competent to make such statements and if requested to give oral testimony regarding them could do so.

1. Petitioner HSBC BANK USA is not the real party in interest for this action for relief from stay as stated on the face of the motion.

2. Petitioner HSBC BANK USA is a federal bank and all federal banks are barred from risking their assets in investments such as the purchase of the property in question in this motion.

3. Petitioner HSBC BANK USA is not claiming to be the owner of the property in question located at 473 Verano, San Jose, CA 95111.

4. This motion is not brought by the real party in interest and is therefore barred by the Federal Rules of Civil Procedure.

5. Further, HSBC BANK USA is an incompetent and cannot on its own initiative bring an action, and therefore it's lawyers have committed intrinsic fraud upon this court by claiming standing to bring this motion.

6. The entity that the lawyers for the Petitioner HSBC BANK USA claim to be bringing their motion on behalf of, is a mutual fund called SEQMT 2007-3.

7. The mutual fund who is not the petitioner in this action, made a void and fraudulent foreclosure action because they failed to file a declaration with the SANTA CLARA COUNTY Clerk-Recorder's office containing the signatures of 51 percent of the holders in due course of the res of the promissory note prior to initiating foreclosure action. Further they failed to list the holders of the res on the Notice of Trustee Sale as required by California Civil Code, which also voids the sale of the property at auction.

8. The fraudulent purchase of the property by the same entity that set up the sale, by res ipsa loquitor, shows the intent of willful mortgage fraud and theft of property by bank in this case.

9. The mortgage was a MERS loan, and MERS acting clandestinely, foreclosed without standing, without the original promissory note, which must be possessed and shown by law to prove standing. MERS cannot legally operate in the state of California, and so has surreptitiously hidden behind one of their nominees, a trust called SEQMT 2007-3. See attached article on MERS.

10. The beneficiary filed a chapter 13 bankruptcy and has not filed a previous one within the last year, therefore his stay is valid. The automatic stay cannot be lifted unless there is proof that either illegal activity is going on inside the home located at 493 Verano, or if the property is being destroyed (reference NOLO Law Book on Chapter 13 Bankruptcy). The petitioner has never shown, proven, or even alleged either of these two conditions. Therefore there is no proof that either of these two conditions has been met. There are no police reports to substantiate any such condition and there are no affidavits submitted as proof of either of those conditions.

11. On and for the record, I now declare, under oath and penalty of perjury, that: no illegal activities are being performed at the 493 Verano location; and no destruction of the property at 493 Verano has been done. One this basis, the automatic stay cannot be lifted pursuant to Title 11 U.S.C., and I must be allowed to remain in the property pending submission and approval of the plan, and upon approval of the plan, I must be allowed to remain in my property for the life of the bankruptcy, as stated in the NOLO Law Book on Chapter 13 Bankruptcy.

12. The motion for lift of stay was brought by an entity that is not the real party in interest in violation of Federal Rules of Civil Procedure, and the movant never met their burden of proof that either of the two required conditions for lift of stay were met.

13. For all these reasons, the undersigned, states that this motion must be dismissed with prejudice against the movant HSBC BANK USA.

14. This signed declaration is considered evidence under the evidence code.

Dated: August 27, 2010        By: _____
                                   TUAN HAI DANG

**DOCUMENT #1**

# NOLO

"An excellent book that can guide you through the process."
— FORBES

10TH EDITION

**AVOID FORECLOSURE**

# Chapter 13 Bankruptcy

**Keep Your Property & Repay Debts Over Time**

- Save your home and car
- Pay pennies for every dollar owed
- Cancel debts

Attorney Stephen Elias
& Robin Leonard, J.D.



Case: 10-57266   Doc# 26   Filed: 08/27/10   Entered: 08/30/10 14:53:20   Page 7 of 20

*Free Legal Updates at Nolo.com*

One of the most powerful features of bankruptcy is the automatic stay: a court order that goes into effect as soon as you file, protecting you from certain actions by your creditors. The automatic stay stops most debt collectors dead in their tracks and keeps them at bay for the rest of your case. Once you file, all collection activity (with some exceptions, explained below) must go through the bankruptcy court—and most creditors cannot take any further collection actions against you while the bankruptcy is pending.

This chapter explains how the automatic stay applies to typical debt collection efforts, including a couple of situations in which you might not get the protection of the automatic stay. It also explains how the automatic stay protects your codebtors from collection activities. And, it covers how the automatic stay works in eviction proceedings—vital information for any renter who files for bankruptcy.

**TIP**
**You don't need bankruptcy to stop your creditors from harassing you.** Many people begin thinking about bankruptcy when their creditors start phoning them at home and on the job. Federal law prohibits debt collectors from doing this once you tell the creditors, in writing, that you don't want to be called. And if you orally tell debt collectors that you refuse to pay, it is illegal for them to contact you except to send one last letter making a final demand for payment before filing a lawsuit. While just telling a creditor to stop usually works, you may have to send a written follow-up letter. (You can find a sample letter in Ch. 1.)

## How Long the Stay Lasts

The automatic stay is "automatic" because you don't have to ask the court to issue it, and the court doesn't have to take any special action to make it effective: Once you file, the stay is in place, automatically, by operation of law. The stay prohibits creditors and collection agencies from taking any action to collect most kinds of debts you owe them—unless the law or the bankruptcy court says they can. In some circumstances, the creditor can file an action in court to have the stay lifted (called a "Motion to Lift Stay"). In others, the creditor can simply begin collection proceedings without seeking advance permission from the court.

Unless it is lifted by the bankruptcy court, the stay will remain in effect until one of the following:
- The court confirms your Chapter 13 plan (see Ch. 10).
- Your case is dismissed.

The stay ends when the court confirms your Chapter 13 plan because it is no longer necessary. Once the plan is confirmed, it governs all creditor and debtor behavior as to the debts included in the plan. The confirmation is a federal court order (just like the automatic stay), and any attempt by a creditor to collect a debt covered by the plan is a violation of that order.

## How the Stay Affects Common Collection Actions

Most common types of creditor collection actions are stopped dead by the stay—including harassing calls by debt collectors, reporting debts to credit reporting bureaus, threatening letters by attorneys, and lawsuits to collect payment for credit card and health care bills.

### Home Foreclosures

Many people file for Chapter 13 bankruptcy to prevent their homes from being taken in foreclosure. While the automatic stay will temporarily prevent a foreclosure no matter which type of bankruptcy is filed, in a Chapter 7 bankruptcy, the creditor may be able to have the stay lifted and proceed with the foreclosure. However, the forfeiture can be permanently stopped in a Chapter 13 bankruptcy.

> EXAMPLE: Angel owns his home. He has been faithfully making his monthly mortgage payment of $900 for eight years and has incurred $50,000 worth of credit card debt. In May 2007, Angel's job at a local telecommunications company is outsourced as part of a monster layoff. He obtains another job at a much lower salary and slowly but surely falls two months behind on his mortgage payments. His lender sends him a three-month notice of intent to foreclose on the mortgage.

Case: 10-57266   Doc# 26   Filed: 08/27/10   Entered: 08/30/10 14:53:20   Page 8 of 20

Angel visits a bankruptcy lawyer, who explains that he can file for Chapter 7 bankruptcy to wipe out the credit card debt, but unless he can get current on his mortgage, the lender may be able to get permission from the bankruptcy court to proceed with the foreclosure. On the other hand, if Angel files for Chapter 13 bankruptcy, he can not only stop the foreclosure from proceeding, but also buy some time to pay off the arrearage as part of his Chapter 13 plan.

As is true of just about everything related to bankruptcy, there is an exception to this wonderful remedy. The automatic stay won't stop a foreclosure in a Chapter 13 bankruptcy if you filed another bankruptcy case within the previous two years and the court, in that proceeding, lifted the stay and allowed the lender to proceed with the foreclosure. In other words, the law won't allow you to prevent a foreclosure by filing serial bankruptcies.

EXAMPLE: Julie falls three months behind on her mortgage and receives a notice of intent to foreclose from her lender. Julie stops making any further payments and tries to sell her home to recover her remaining equity, but the market has slowed, and she can't find a buyer. Julie files for Chapter 7 bankruptcy to prevent her home from being sold at auction (the procedure used in about half the states). The auction is postponed because of the automatic stay, but the creditor moves to have the stay lifted. The judge grants the motion two months after Julie filed for bankruptcy. The lender sets a new date for the auction.

Julie now files for Chapter 13 bankruptcy, intending to keep her home by paying the arrearage over the life of the plan. Because Julie filed her Chapter 7 bankruptcy within the previous two years, and the stay was lifted in that case, however, the stay will not apply in her Chapter 13 case. The lender will be allowed to proceed with the rescheduled auction.

Even if you are in Julie's position, you may still be able to keep your home. As mentioned, the automatic stay in Chapter 13 cases lasts only until the court confirms the plan filed by the debtor. Once the plan is confirmed, it governs the behavior of debtor and creditor alike. For example, if Julie continues with her Chapter 13 case, and the court confirms a plan that provides for repayment of the arrearage, the lender will have to abide by the plan and allow her to catch up on her payments.

If your home is sold or auctioned off before your plan is confirmed or the stay ends, you won't be able to get it back. Courts generally will not undo this type of transaction because it would be unfair to the buyer.

### Challenging Foreclosures in Automatic Stay Motion Hearings

Until the housing bubble burst, bankruptcy judges routinely granted a lender's motion to lift the stay and proceed with a foreclosure. However, in some recent cases, bankruptcy courts have taken a closer look at these motions and discovered that the institutions filing them aren't necessarily entitled to ask the court to lift the stay. Only the holder of a promissory note is a "party in interest" with the right to request that the stay be lifted. Because of the way mortgages have been divided, bought, and sold lately, the institution asking to lift the stay often cannot produce a valid copy of the promissory note or otherwise prove that it is the legal holder of the note. (See *In re Kang Jin Hwang*, 396 B.R. 757 (Bkrtcy C.D. Cal. 2008) for more on this argument.) Judges are increasingly likely to deny motions to lift the stay unless this type of proof is presented.

### Vehicle Repossessions

Vehicle repossessions work in much the same way as foreclosures except that there is typically no advance repossession notice. If you fall behind on your car note and really don't want your car repossessed, you can file for Chapter 13 bankruptcy and schedule to repay your arrearage as part of your plan. If you file your bankruptcy petition before the repossession, the automatic stay will protect your car up until the time the judge confirms a plan that proposes to pay the arrearage. You'll have to include "adequate protection" payments in your proposed plan to cover the depreciation that occurs between the date you file for bankruptcy and the date your plan is finally confirmed. Typically, this

**DOCUMENT #2**

# NOTICE

## TO COUNSEL AND PARTIES IN INTEREST

## RELIEF FROM STAY MOTIONS

**Revised 1/9/08**

Beginning January 22, 2008 (and until further notice), Judge Bufford will require that a moving party on a relief from stay motion based on a promissory note bring to court for inspection the original promissory note. (Note: do not file the note with the court – bring it to the hearing). Production of the note will be excused only under circumstances such as those provided in Evidence Code Rule 1004 or Cal. Comm. Code § 3301 (as shown by competent evidence).

This requirement will apply because developments in the secondary market for mortgages and other security interests cause the court to lack confidence that presenting a copy of a promissory note is sufficient to show that movant has a right to enforce the note or that it qualifies as a real party in interest (as required by Rules 7017 and 9014). Pursuant to Cal. Comm. Code § 3412, an obligation to pay is only owing to a "person entitled to enforce an instrument" (as defined in § 3301). Thus, the court cannot admit copies of promissory notes in these circumstances under Evidence Code § 1003.

# EXHIBIT 3

# UNIFORM COMMERCIAL CODE COMMITTEE

**WHERE'S THE NOTE, WHO'S THE HOLDER: ENFORCEMENT OF PROMISSORY NOTE SECURED BY REAL ESTATE**

HON. SAMUEL L. BUFFORD
UNITED STATES BANKRUPTCY JUDGE
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES, CALIFORNIA

(FORMERLY HON.) R. GLEN AYERS
LANGLEY & BANACK
SAN ANTONIO, TEXAS

AMERICAN BANKRUPTCY INSTUTUTE
APRIL 3, 2009
WASHINGTON, D.C.

# WHERE'S THE NOTE, WHO'S THE HOLDER

INTRODUCTION

In an era where a very large portion of mortgage obligations have been securitized, by assignment to a trust indenture trustee, with the resulting pool of assets being then sold as mortgage backed securities, foreclosure becomes an interesting exercise, particularly where judicial process is involved. We are all familiar with the securitization process. The steps, if not the process, is simple. A borrower goes to a mortgage lender. The lender finances the purchase of real estate. The borrower signs a note and mortgage or deed of trust. The original lender sells the note and assigns the mortgage to an entity that securitizes the note by combining the note with hundreds or thousands of similar obligation to create a package of mortgage backed securities, which are then sold to investors.

Unfortunately, unless you represent borrowers, the vast flow of notes into the maw of the securitization industry meant that a lot of mistakes were made. When the borrower defaults, the party seeking to enforce the obligation and foreclose on the underlying collateral sometimes cannot find the note. A lawyer sophisticated in this area has speculated to one of the authors that perhaps a third of the notes "securitized" have been lost or destroyed. The cases we are going to look at reflect the stark fact that the unnamed source's speculation may be well-founded.

UCC SECTION 3-309

If the issue were as simple as a missing note, UCC §3-309 would provide a simple solution. A person entitled to enforce an instrument which has been lost, destroyed or stolen may enforce the instrument. If the court is concerned that some third party may show up and attempt to enforce the instrument against the payee, it may order adequate protection. But, and however, a person seeking to enforce a missing instrument must be a person entitled to enforce the instrument, and that person must prove the instrument's terms and that person's right to enforce the instrument. §3-309 (a)(1) & (b).

## WHO'S THE HOLDER

Enforcement of a note always requires that the person seeking to collect show that it is the holder. A holder is an entity that has acquired the note either as the original payor or transfer by endorsement of order paper or physical possession of bearer paper. These requirements are set out in Article 3 of the Uniform Commercial Code, which has been adopted in every state, including Louisiana, and in the District of Columbia. Even in bankruptcy proceedings, State substantive law controls the rights of note and lien holders, as the Supreme Court pointed out almost forty (40) years ago in *United States v. Butner*, 440 U.S. 48, 54-55 (1979).

However, as Judge Bufford has recently illustrated, in one of the cases discussed below, in the bankruptcy and other federal courts, procedure is governed by the Federal Rules of Bankruptcy and Civil Procedure. And, procedure may just have an impact on the issue of "who," because, if the holder is unknown, pleading and standing issues arise.

## BRIEF REVIEW OF UCC PROVISIONS

Article 3 governs negotiable instruments – it defines what a negotiable instrument is and defines how ownership of those pieces of paper is transferred. For the precise definition, see § 3-104(a) ("an unconditional promise or order to pay a fixed amount of money, with or without interest . . . .") The instrument may be either payable to order or bearer and payable on demand or at a definite time, with or without interest.

Ordinary negotiable instruments include notes and drafts (a check is a draft drawn on a bank). See § 3-104(e).

Negotiable paper is transferred from the original payor by negotiation. §3-301. "Order paper" must be endorsed; bearer paper need only be delivered. §3-305. However, in either case, for the note to be enforced, the person who asserts the status of the holder must be in possession of the instrument. *See* UCC § 1-201 (20) and comments.

The original and subsequent transferees are referred to as holders. Holders who take with no notice of defect or default are called "holders in due course," and take free of many defenses. See §§ 3-305(b).

The UCC says that a payment to a party "entitled to enforce the instrument" is sufficient to extinguish the obligation of the person obligated on the instrument. Clearly, then, only a holder – a person in possession of a note endorsed to it or a holder of bearer paper – may seek satisfaction or enforce rights in collateral such as real estate.

NOTE: Those of us who went through the bank and savings and loan collapse of the 1980's are familiar with these problems. The FDIC/FSLIC/RTC sold millions of notes secured and unsecured, in bulk transactions. Some notes could not be found and enforcement sometimes became a problem. Of course, sometimes we are forced to repeat history. For a recent FDIC case, *see Liberty Savings Bank v. Redus*, 2009 WL 41857 (Ohio App. 8 Dist.), January 8, 2009.

## THE RULES

Judge Bufford addressed the rules issue this past year. *See In re Hwang*, 396 B.R. 757 (Bankr. C. D. Cal. 2008). First, there are the pleading problems that arise when the holder of the note is unknown. Typically, the issue will arise in a motion for relief from stay in a bankruptcy proceeding.

According F.R.Civ. Pro. 17, "[a]n action must be prosecuted in the name of the real party in interest." This rule is incorporated into the rules governing bankruptcy procedure in several ways. As Judge Bufford has pointed out, for example, in a motion for relief from stay, filed under F.R.Bankr.Pro. 4001 is a contested matter, governed by F. R. Bankr. P. 9014, which makes F.R. Bankr. Pro. 7017 applicable to such motions. F.R. Bankr. P. 7017 is, of course, a restatement of F.R. Civ. P. 17. *In re Hwang*, 396 B.R. at 766. The real party in interest in a federal action to enforce a note, whether in bankruptcy court or federal district court, is the owner of a note. (In securitization transactions, this would be the trustee for the "certificate

3

holders.") When the actual holder of the note is unknown, it is impossible – not difficult but impossible – to plead a cause of action in a federal court (unless the movant simply lies about the ownership of the note). Unless the name of the actual note holder can be stated, the very pleadings are defective.

**STANDING**

Often, the servicing agent for the loan will appear to enforce the note. Assume that the servicing agent states that it is the authorized agent of the note holder, which is "Trust Number 99." The servicing agent is certainly a party in interest, since a party in interest in a bankruptcy court is a very broad term or concept. *See, e.g., Greer v. O'Dell*, 305 F.3d 1297, 1302-03 (11th Cir. 2002). However, the servicing agent may not have standing: "Federal Courts have only the power authorized by Article III of the Constitutions and the statutes enacted by Congress pursuant thereto. ... [A] plaintiff must have Constitutional standing in order for a federal court to have jurisdiction." *In re Foreclosure Cases*, 521 F.Supp. 3d 650, 653 (S.D. Ohio, 2007) (citations omitted).

But, the servicing agent does not have standing, for only a person who is the holder of the note has standing to enforce the note. *See, e.g., In re Hwang*, 2008 WL 4899273 at 8.

The servicing agent may have standing if acting as an agent for the holder, assuming that the agent can both show agency status and that the principle is the holder. *See, e.g., In re Vargas*, 396 B.R. 511 (Bankr. C.D. Cal. 2008) at 520.

A BRIEF ASIDE: WHO IS MERS?

For those of you who are not familiar with the entity known as MERS, a frequent participant in these foreclosure proceedings:

MERS is the "Mortgage Electronic Registration System, Inc. "MERS is a mortgage banking 'utility' that registers mortgage loans in a book entry system so that ... real estate loans can be bought, sold and securitized, just like Wall Street's book entry utility for stocks and bonds is the Depository Trust and Clearinghouse." Bastian, "Foreclosure Forms", State. Bar of Texas **17[th] Annual Advanced Real Estate Drafting Course**, March 9-10, 2007, Dallas, Texas. MERS is enormous. It originates thousands of loans daily and is the mortgagee of record for at least 40 million mortgages and other security documents. *Id.*

MERS acts as agent for the owner of the note. Its authority to act should be shown by an agency agreement. Of course, if the owner is unknown, MERS cannot show that it is an authorized agent of the owner.

**RULES OF EVIDENCE – A PRACTICAL PROBLEM**

This structure also possesses practical evidentiary problems where the party asserting a right to foreclose must be able to show a default. Once again, Judge Bufford has addressed this issue. At *In re Vargas*, 396 B.R. at 517-19. Judge Bufford made a finding that the witness

4

called to testify as to debt and default was incompetent. All the witness could testify was that he had looked at the MERS computerized records. The witness was unable to satisfy the requirements of the Federal Rules of Evidence, particularly Rule 803, as applied to computerized records in the Ninth Circuit. *See id.* at 517-20. The low level employee could really only testify that the MERS screen shot he reviewed reflected a default. That really is not much in the way of evidence, and not nearly enough to get around the hearsay rule.

**FORECLOSURE OR RELIEF FROM STAY**

In a foreclosure proceeding in a judicial foreclosure state, or a request for injunctive relief in a non-judicial foreclosure state, or in a motion for relief proceeding in a bankruptcy court, the courts are dealing with and writing about the problems very frequently.

In many if not almost all cases, the party seeking to exercise the rights of the creditor will be a servicing company. Servicing companies will be asserting the rights of their alleged principal, the note holder, which is, again, often going to be a trustee for a securitization package. The mortgage holder or beneficiary under the deed of trust will, again, very often be MERS.

Even before reaching the practical problem of debt and default, mentioned above, the moving party must show that it holds the note or (1) that it is an agent of the holder and that (2) the holder remains the holder. In addition, the owner of the note, if different from the holder, must join in the motion.

Some states, like Texas, have passed statutes that allow servicing companies to act in foreclosure proceedings as a statutorily recognized agent of the noteholder. *See, e.g.,* Tex. Prop. Code §51.0001. However, that statute refers to the servicer as the last entity to whom the debtor has been instructed to make payments. This status is certainly open to challenge. The statute certainly provides nothing more than *prima facie* evidence of the ability of the servicer to act. If challenged, the servicing agent must show that the last entity to communicate instructions to the debtor is still the holder of the note. *See, e.g., HSBC Bank, N.A. v. Valentin*, 21 N.Y. Misc. 3d 1123(A), 2008 WL 4764816 (Table) (N.Y. Sup.), Nov. 3, 2008. In addition, such a statute does not control in federal court where Fed. R. Civ. P. 17 and 19 (and Fed. R. Bankr. P. 7017 and 7019) apply.

**SOME RECENT CASE LAW**

These cases are arranged by state, for no particular reason.

<u>Massachusetts</u>

*In re Schwartz*, 366 B.R.265 (Bankr. D. Mass. 2007)

*Schwartz* concerns a Motion for Relief to pursue an eviction. Movant asserted that the property had been foreclosed upon prior to the date of the bankruptcy petition. The *pro se* debtor asserted that the Movant was required to show that it had authority to conduct the sale. Movant,

5

and "the party which appears to be the current mortgagee..." provided documents for the court to review, but did not ask for an evidentiary hearing. Judge Rosenthal sifted through the documents and found that the Movant and the current mortgagee had failed to prove that the foreclosure was properly conducted.

Specifically, Judge Rosenthal found that there was no evidence of a proper assignment of the mortgage prior to foreclosure. However, at footnote 5, *Id.* at 268, the Court also finds that there is no evidence that the note itself was assigned and no evidence as to who the current holder might be.

*Nosek v. Ameriquest Mortgage Company (In re Nosek)*, 286 Br. 374 (Bankr D Mass. 2008).

Almost a year to the day after *Schwartz* was signed, Judge Rosenthal issued a second opinion. This is an opinion on an order to show cause. Judge Rosenthal specifically found that, although the note and mortgage involved in the case had been transferred from the originator to another party within five days of closing, during the five years in which the chapter 13 proceeding was pending, the note and mortgage and associated claims had been prosecuted by Ameriquest which has represented itself to be the holder of the note and the mortgage. Not until September of 2007 did Ameriquest notify the Court that it was merely the servicer. In fact, only after the chapter 13 bankruptcy had been pending for about three years was there even an assignment of the servicing rights. *Id.* at 378.

Because these misrepresentations were not simple mistakes: as the Court has noted on more than one occasion, those parties who do not hold the note of mortgage do not service the mortgage do not have standing to pursue motions for leave or other actions arising form the mortgage obligation. *Id* at 380.

As a result, the Court sanctioned the local law firm that had been prosecuting the claim $25,000. It sanctioned a partner at that firm an additional $25,000. Then the Court sanctioned the national law firm involved $100,000 and ultimately sanctioned Wells Fargo $250,000. *Id.* at 382-386.

*In re Hayes*, 393 B.R. 259 (Bankr. D. Mass. 2008).

Like Judge Rosenthal, Judge Feeney has attacked the problem of standing and authority head on. She has also held that standing must be established before either a claim can be allowed or a motion for relief be granted.

Ohio

*In re Foreclosure Cases*, 521 F.Supp. 2d (S.D. Ohio 2007).

Perhaps the District Court's orders in the foreclosure cases in Ohio have received the most press of any of these opinions. Relying almost exclusively on standing, the Judge Rose has determined that a foreclosing party must show standing. "[I]n a foreclosure action, the plaintiff

6

must show that it is the holder of the note and the mortgage at the time that the complaint was filed." *Id.* at 653.

Judge Rose instructed the parties involved that the willful failure of the movants to comply with the general orders of the Court would in the future result in immediate dismissal of foreclosure actions.

*Deutsche Bank Nat'l Trust Co. v. Steele*, 2008 WL 111227 (S.D. Ohio) January 8, 2008.

In *Steele*, Judge Abel followed the lead of Judge Rose and found that Deutsche Bank had filed evidence in support of its motion for default judgment indicating that MERS was the mortgage holder. There was not sufficient evidence to support the claim that Deutsche Bank was the owner and holder of the note as of that date. Following *In re Foreclosure Cases*, 2007 WL 456586, the Court held that summary judgment would be denied "until such time as Deutsche Bank was able to offer evidence showing, by a preponderance of evidence, that it owned the note and mortgage when the complaint was filed." 2008 WL 111227 at 2. Deutsche Bank was given twenty-one days to comply. *Id.*

Illinois

*U.S. Bank, N.A. v. Cook*, 2009 WL 35286 (N.D. Ill. January 6, 2009).

Not all federal district judges are as concerned with the issues surrounding the transfer of notes and mortgages. *Cook* is a very pro lender case and, in an order granting a motion for summary judgment, the Court found that Cook had shown no "countervailing evidence to create a genuine issue of facts." *Id.* at 3. In fact, a review of the evidence submitted by U.S. Bank showed only that it was the alleged trustee of the securitization pool. U.S. Bank relied exclusively on the "pooling and serving agreement" to show that it was the holder of the note. *Id.*

Under UCC Article 3, the evidence presented in *Cook* was clearly insufficient.

New York

*HSBC Bank USA, N.A. v. Valentin*, 21 Misc. 3D 1124(A), 2008 WL 4764816 (Table) (N.Y. Sup.) November 3, 2008. In *Valentin*, the New York court found that, even though given an opportunity to, HSBC did not show the ownership of debt and mortgage. The complaint was dismissed with prejudice and the "notice of pendency" against the property was cancelled.

Note that the *Valentin* case does not involve some sort of ambush. The Court gave every HSBC every opportunity to cure the defects the Court perceived in the pleadings.

California

*In re Vargas*, 396 B.R. 511 (Bankr. C.D. Cal. 2008)

7

and

*In re Hwang*, 396 B.R. 757 (Bankr. C.D. Cal. 2008)

These two opinions by Judge Bufford have been discussed above. Judge Bufford carefully explores the related issues of standing and ownership under both federal and California law.

<u>Texas</u>

*In re Parsley*, 384 B.R. 138 (Bankr. S.D. Tex. 2008)

and

*In re Gilbreath*, 395 B.R. 356 (Bankr. S.D. Tex. 2008)

These two recent opinions by Judge Jeff Bohm are not really on point, but illustrate another thread of cases running through the issues of motions for relief from stay in bankruptcy court and the sloppiness of loan servicing agencies. Both of these cases involve motions for relief that were not based upon fact but upon mistakes by servicing agencies. Both opinions deal with the issue of sanctions and, put simply, both cases illustrate that Judge Bohm (and perhaps other members of the bankruptcy bench in the Southern District of Texas) are going to be very strict about motions for relief in consumer cases.

**SUMMARY**

The cases cited illustrate enormous problems in the loan servicing industry. These problems arise in the context of securitization and illustrate the difficulty of determining the name of the holder, the assignee of the mortgage, and the parties with both the legal right under Article 3 and the standing under the Constitution to enforce notes, whether in state court or federal court.

Interestingly, with the exception of Judge Bufford and a few other judges, there has been less than adequate focus upon the UCC title issues. The next round of cases may and should focus upon the title to debt instrument. The person seeking to enforce the note must show that:

(1) It is the holder of this note <u>original</u> by transfer, with all necessary rounds;
(2) It had possession of the note before it was lost;
(3) If it can show that title to the note runs to it, but the original is lost or destroyed, the holder must be prepared to post a bond;
(4) If the person seeking to enforce is an agent, it must show its agency status <u>and</u> that its principal is the holder of the note (and meets the above requirements).

Then, and only then, do the issues of evidence of debt and default and assignment of mortgage rights become relevant.

8